

**LAW OFFICES OF WILLIAM CAFARO**

www.cafaroesq.com

William Cafaro, Esq.
ADMITTED IN NY, CA, MD & TX

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
Email: bcafaro@cafaroesq.com

Amit Kumar, Esq.
Associate
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

Andrew S. Buzin, Esq.
Of Counsel
ADMITTED IN NY, FL & DC

December 5, 2016

*Via ECF*
Hon. Alleyne Ross, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

        Re: Ayala *et al* v. Your Favorite Auto Repair &
           Diagnostic Center, Inc. *et al*
           Index No.: 14-CV-05269 (ARR) (JO)

Your Honor:

  Please accept this joint request for approval of the Settlement Agreement[1] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") is appended as Ex. "1".

  **I.**  **Procedural History**

  The plaintiffs Neldo Ayala, Mohammed Elissaoui, Eber Vega[2,] and Carlos Garcia, ("Plaintiffs") filed their original complaint on September 9, 2014 against Your Favorite Auto Repair & Diagnostic Center, Inc. ("YFA") and Anthony Boumoussa, seeking damages for unpaid

---

[1] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, except to enforce the Agreement.
[2] The initial pleadings incorrectly named this plaintiff Vega Eber, but this was corrected in the JPTO, Doc. 54, pp. 4-5 ¶ 9. This stipulation also corrected the caption.

Re:   Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
      Case No.: 14-Civ-05269 (ARR) (JO)
      December 5, 2016

overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), together with ancillary claims for unpaid hours at straight time, spread of hours and recordkeeping violations, unlawful deductions from their pay, and various other relief pursuant to substantive New York law.

A motion to amend the complaint, made to seek an alternative means of federal jurisdiction because the defendants had turned over tax returns for the only entity named in the original complaint showing no gross receipts whatsoever, was denied without prejudice, DE's 34-5, 37, but this became irrelevant after sufficient receipts for enterprise jurisdiction were admitted. Consequently, the first amended complaint was only filed as an exhibit to that motion and was never accepted as a pleading. The second amended complaint was filed on December 29, 2015, adding Bay Parkway Super Clean Car Wash Inc. ("Bay Parkway") and Auto Maintenance Sales & Service Car Washing & Detailing Inc. (hereinafter "AMS") as parties, Doc. 41.

Discovery proceeded to conclusion, a JPTO was prepared and filed, and each party submitted its findings of fact and conclusions of law. While I was preparing the testimony affidavits of the Plaintiffs, they found 2 additional items of very probative evidence which necessitated amendment of the pre-trial order and occasioned certain additional discovery, DE 60 and 61, respectively, another commission report, Doc. 61-1, Pl. Tr. Ex. 14-1, showing the same initials, "MEIR", as the timesheet Elissaoui had originally produced, Pl. Tr. Ex. 1-1, and a photograph showing Elissaoui and Garcia at work with their uniforms on, taken on August 17, 2013 at 3:42 PM, P. Tr. Ex. 13-1, after Boumoussa had already clocked them out in his records, Doc. 60-2, Def. Tr. Ex. A-893, both of which were allowed and received in evidence on trial. This matter was then tried to the Court on September 12 and 13, 2016, and a very thorough Opinion and Order was rendered on September 19, 2016, Doc. 85, referring the matter to Magistrate Judge Orenstein for calculation of the damages in accordance with the findings in the first instance. This settlement followed prior to the submission of calculations to Judge Orenstein.

## II.   Factual Background and Findings After Liability Trial

During the time frame covered by the complaint, AMS and Anthony Boumoussa, its sole principal, ran an auto lube shop at 7017 Bay Parkway, Brooklyn, New York 11204, which performed oil changes, changed shocks, serviced brakes, replaced wiper blades and fan belts, and performed various other auto service and repair tasks. Except for Carlos Garcia, who began working for the Defendants cleaning up the shop and later began working as a mechanic, all of the Plaintiffs worked as mechanics repairing and servicing automobiles during their entire employment with the defendants, and were denominated as technicians by the Defendants.

Because this matter was tried to this Court as indicated above, findings have been set out here in summary fashion, accompanied by references to the Opinion and Order ("Op." followed by the applicable pagination). Based upon analysis of the purported wage and hour records defendants produced, spoliation of the evidence caused by defendants, plaintiffs' credible

Case 1:14-cv-05269-ARR-JO Document 91 Filed 12/05/16 Page 3 of 11 PageID #: 1140

3 | Page

Re: Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
Case No.: 14-Civ-05269 (ARR) (JO)
December 5, 2016

testimony and defendants' incredible testimony, the Court found that defendants failed to make, keep and preserve accurate records of the hours plaintiffs worked, Op. p.9, ¶ E. The Court found that exclusion of the defendants' records was the appropriate sanction for spoliation, *Yu Chen v. LW Rest., Inc.*, No. 10-CV-200, 2011 WL 3420433, 2011 U.S. Dist. LEXIS 85403 (E.D.N.Y. Aug. 3, 2011), but had this sanction not been imposed, the Court had already determined that the records were inaccurate, Op. 43. Therefore, based upon the testimony, the Court based its findings on the estimates of the employees hours in the absence of records which were adequate to ascertain the precise number of hours worked, *Kuebel v. Black & Decker, Inc.*, 643 F. 352, (2d Cir. 2011); *Anderson v. Mt. Clemens Pottery Co.*, 382 U.S. 680, 868 (1946), Op. 37, and calculations have been made utilizing those findings are set forth under heading III *infra*. The parties stipulated in the JPTO that AMS and Boumoussa jointly employed each of the plaintiffs within the meaning of 29 U.S.C. § 207(a)(1), JPTO, Doc. 54, p. 5, ¶ 9(c) and (d), and the Court found both to be employers within the meaning of § 651 of the NYLL, Op p.33. The Court also found sufficient indicia of an interrelationship between AMS, the immediate corporate employer and the related corporation, YFA, to justify a finding that these two entities constituted a single integrated enterprise for purposes of FLSA liability, *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-2335, 2016 U.S. Dist. LEXIS 32750, at *20 (E.D.N.Y. Mar. 31, 2016); Op. 33-37.

### III. Findings With Respect to Plaintiffs' Individual Claims

Utilizing Your Honor's finding, the value of each of the Plaintiffs' claims, inclusive of all liquidated damages allowed by the Court, has been calculated as follows:

| Name | FLSA Wages Owed | FLSA Liquidated Damages | NYLL Wages Owed | State Liquidated Damages on Wages | Improper Deductions | Liquidated Damages on Improper Deductions | Record Keeping Violations | Total |
|---|---|---|---|---|---|---|---|---|
| Neldo Ayala | $17,237.68 | $17,237.68 | $ 6,333.72 | $ 3,559.44 | $ 1,250.00 | $ 950.00 | $ 10,000.00 | $ 56,568.51 |
| Mohammed Elissaoui | $10,267.25 | $10,267.25 | $ 9,990.94 | $ 3,628.07 | $ 1,180.00 | $ 1,180.00 | $ 10,000.00 | $ 46,513.51 |
| Eber Vega | $10,846.41 | $10,846.41 | $ - | $ - | $ 880.00 | $ 880.00 | $ 10,000.00 | $ 33,452.81 |
| Carlos Garcia | $ 8,464.29 | $ 8,464.29 | $ 5,069.43 | $ 2,740.57 | $ 680.00 | $ 380.00 | $ 10,000.00 | $ 35,798.57 |
| TOTAL | $46,815.61 | $46,815.61 | $ 21,394.09 | $ 9,928.08 | $ 3,990.00 | $ 3,390.00 | $ 40,000.00 | $172,333.40 |

The supporting spreadsheets for these calculations are collectively appended as Ex. "2". These calculations take into account each of the Court's findings regarding the number of hours each plaintiff worked, how they were paid, and any interruptions in their employment with the defendants. In order to calculate the regular rate of pay where the plaintiffs were paid on a salary basis, the wages, inclusive of any commissions earned, were divided by the total weekly hours worked. In order to calculate the regular rate of pay where the plaintiffs testified that that they received an hourly rate, this hourly rate was multiplied by the number of hours worked per week. The weekly commissions earned were added to that product, and then that sum was divided by the total hours worked in a given week. The wages owed are one half times the regular rate of pay multiplied by the number of overtime hours worked by each of the Plaintiffs during a specific time period. Each of the Plaintiffs then also received liquidated damages under the FLSA for 3 years

Re:     Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
        Case No.: 14-Civ-05269 (ARR) (JO)
        December 5, 2016

preceding the filing date and liquidated damages under the NYLL for the preceding state statutory period, as described in the Court's opinion. The computations above also recognize any improper deductions from plaintiffs' pay for damage to customers' vehicles and for any retention of the Plaintiffs' first week's wages as well as state liquidated damages on those deductions.

### IV.    The Settlement Reached Between the Parties

The parties have agreed upon a settlement in the gross amount of $300,000.00, which is fair and adequate compensation for all claims being released hereunder. This constitutes 100 % of the total claim presented, as tabulated above. Each of the Plaintiffs have signed an internal statement with my office detailing the amount each will receive, and each is aware of how much each of the other Plaintiffs will receive. The balance of the settlement amount after the payment of all of the Plaintiffs' claims in full, ($300,000 - $172,333.40 = $127,666.60), is significantly less than the total lodestar and the out of pocket disbursements expended as explained more fully under the heading dealing with fees, *infra*.

With respect to the proposed release language in the Agreement, it is limited solely to wage and hour and related claims. *See*, *Lazaro-Garcia v. Sengupta Food Servs.*, 15-cv-4259, 2015 U.S. Dist. LEXIS 167991 (S.D.N.Y. Dec. 15, 2015). Additionally, the Agreement contains no confidentiality or non-disparagement provisions, s*ee Ocasio v. Big Apple Sanitation, Inc*., 13-cv-4758, 2016 U.S. Dist. LEXIS 16527 (E.D.N.Y. Feb. 9, 2016), nor does it contain any non-cooperation provisions. Although it does contain a covenant that the Plaintiffs will not seek reemployment, each of them have unequivocally expressed that they have no desire to go back to work for Mr. Boumoussa in the future.

The Agreement provides for the entry of judgment after notice to cure in the event payment is not timely made, and the parties jointly request the Court to retain jurisdiction pursuant to ¶ 5A of Your Honor's individual rules.

Plaintiffs believe that the $300,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of further proceedings before the Magistrate Judge to fix the damages, and it will avoid further appellate proceedings as well. Each settling party is represented by experienced counsel. Each counsel's practice focuses on employment law and each individual attorney has significant experience in FLSA matters. Plaintiffs' attorneys handle a significant volume of FLSA cases, and are knowledgeable in this field.

After the liability verdict was rendered, settlement negotiations began in earnest, and parties exchanged demands and counterproposals at arms-length before reaching the settlement of this action for $300,000.00 with a payout schedule which will make each of the plaintiffs whole very quickly.

Re:      Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
         Case No.: 14-CIV-05269 (ARR) (JO)
         December 5, 2016


The terms and conditions of the settlement are fair, reasonable, and in the best interest of the parties. The settlement agreement reflects a reasonable compromise of the disputed issues in the totality of the circumstances. In addition, both parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation, and Plaintiffs prefer to receive their proceeds without the delay and risk that continuing to litigate the matter would entail.


### V.     The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotations omitted). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335.


#### *Plaintiff's Range of Possible Recovery*

The proposed settlement provides for payment to each of the plaintiffs up front and in full. It therefore constitutes full recovery, with attorney's fees and disbursements being completely absorbed by the Defendants.

Re: Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
Case No.: 14-C<small>IV</small>-05269 (ARR) (JO)
December 5, 2016

*The Extent To Which The Settlement Will Enable The Parties To Avoid Anticipated Burdens And Expenses In Establishing Their Respective Claims And Defenses And The Seriousness Of The <u>Litigation Risks Faced By The Parties</u>*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

Weighing the benefits of an almost immediate, guaranteed payment to the Plaintiff against the risks and burdens associated with proceeding with the damages phase, post-trial motions, and appellate review before the circuit, the settlement is reasonable and these factors weigh in favor of approval.

*<u>Whether the Settlement Agreement is the Product of Arm's-Length Bargaining</u>*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in serious settlement discussions after the liability verdict in order to arrive at the attached settlement. At all times, the parties' negotiations were on an arm's-length basis. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

*<u>Possibility of Fraud or Collusion</u>*

In light of the fact that this matter was tried before the Court, this is not an issue. There is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the plaintiffs all left the defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon any of the plaintiffs in the workplace.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05-cv-10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel

Re:     Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
        Case No.: 14-C<small>IV</small>-05269 (ARR) (JO)
        December 5, 2016

and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the settlement agreement should be approved.

### VI.     Plaintiffs' Counsel is Entitled to a Reasonable Fee According to the Lodestar, Which Exceeds the Fee Amount Requested With No Multiplier.

Plaintiffs' counsel had to aggressively prosecute this case from the outset to bring it to its current posture. Defendants initially defaulted, necessitating wasteful default proceedings. Defendants then disclosed records which showed approximately 40 hours per week for each of the plaintiffs, reflecting a few overtime hours in an apparent attempt to garner some credibility. At the initial settlement conference before Magistrate Judge Orenstein on July 20, 2015, plaintiff Elissaoui showed me his timesheet for the week of July 10, 2013 which showed 53.9 hours, P. Tr. Ex. 1-1, in sharp contrast to the his timesheet for the same week previously produced by defendants which showed only 39.11 hours, Def Tr. Ex. A-884. It was this good fortune on plaintiffs' part which alerted me to the fact that these records had been falsified, and that it was our responsibility to dig in and prosecute this case to whatever end it led to.

Written demands for preservation were sent that same day, July 20, 2015, and at the request of the undersigned, the defendant Boumoussa was personally admonished by Magistrate Judge Orenstein on August 4, 2015 not to alter any of the historical data on the subject file server. On August 20, 2015, another preservation demand was sent to Boumoussa, whose prior counsel had already withdrawn. After searching around, I was able to locate a computer expert knowledgeable in this particular software, Shop- Pro. He was able to advise me that upon forensic examination of the server, that the coding and architecture would probably reveal evidence of any alterations made after initial entry of the data. I was accordingly in contact with defendants' present counsel requesting availability dates for forensic examination of the file server when I was advised of the alleged theft of September 12, 2015. The rest of the prosecution of this case was conducted under the assumption that the report of the theft of the computer was false and fraudulent. The police complaint report, UF#61No. 2015-062-05423, Pl. Tr. Ex. 12-3 -12-5, was obtained, and I then followed up with subpoenas for all of the Complaint Follow-Up Reports, DD-5's, Pl. Tr. Exs. 12-4 through 12-25. Because these are routinely redacted for the protection of crime victims, it was necessary to get completely unredacted reports containing the information necessary to bring out all the discrepancies elicited on trial. Getting compliance with this required another order and extensive follow-up up the chain of police command, but the effort was well rewarded when the Court found that "the entire sequence of events suggests…that defendants purposefully destroyed their records to avoid liability in this lawsuit", Op. p.24 bottom – p. 25 top. I also met with a non-party witness, Garth Sullivan, who had worked for the defendants and who was originally prepared to testify about discrepancies in the records of the defendant. I spoke with him on the phone numerous times. After another order was obtained, the testimony of this witness, who became recalcitrant, was perpetuated on video. After he was subpoenaed, he called me and told me that he was going to develop memory lapses in his testimony, which he did.

Re:     Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
        Case No.: 14-CIV-05269 (ARR) (JO)
        December 5, 2016

I have personally expended 220.9 hours in the prosecution of this case. Ex. "3" (Attorney Cafaro's time records). My associate, Amit Kumar has expended 234.4 hours on this litigation. Ex. "4" (Attorney Kumar time records). Additionally, my office incurred staff time in an aggregate of 43.2 hours. Ex. "5" (Timesheet of Legal Assistant Odaris Palacios evidencing 17.3 hours worked and Timesheet of Paralegal Nicholas Duran evidencing 25.9 hours worked).

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (*citing In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I graduated from Fordham University with a B.S. in Accounting in 1976. I then attended the University of San Diego School of Law where I graduated in 1979. Later that same year I was admitted to the California State bar, and in 1981, I was admitted into the New York State bar. Since being admitted into the New York bar, I have also been admitted into the bars of both Texas and Maryland. Since my admission into the New York State bar I served as an Assistant District Attorney in Bronx County for 4 years. In 1986 I began working in private practice, where for many years I focused on personal injury and medical malpractice work. I am a successful trial attorney, and I have personally taken two verdicts in eight figures and I have numerous settlements and verdicts in seven figures. In 2009, I began development of the wage and hour practice of the firm. Since then, my office has filed over 400 individual, collective, and class actions under the Fair Labor Standards Act and New York Labor Law. Under my leadership, the firm has also started a vibrant plaintiff's side employment discrimination practice. I am a member of the New York chapter of the National Employment Lawyers Association. I am also fluent in Spanish. I have also been certified as class counsel in this district, see *Chavarria v. Airport Serv., LLC*, 875 F. Supp. 2d 164, (E.D.N.Y. 2012). My normal hourly rate is $400. *See Cajamarca v. Yerina Rest. Corp.*, 2016 U.S. Dist. LEXIS 102686, *4-5 (S.D.N.Y. Aug. 4, 2016); *Flores v. Food Exrpess Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351, 2016 WL 386042 (E.D.N.Y. Feb. 1, 2016); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding William Cafaro, Esq. a reasonable rate of $400 per hour in a FLSA collective matter with approximately 175 opt-ins); *See also Clark v. Ecolab, Inc.*, 07 Civ. 08623 (PAC), DE 101, (S.D.N.Y. Apr 27, 2010) (In 2010 awarding rates for partners between $475 to $900 per hour); *Guallpa v. N.Y. Pro Signs Inc.*, No. 11cv3133 (LGS) (FM), 2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014) (Approving rate of $600 per hour for a partner in a wage and hour action).

Amit Kumar has been an associate with the Law Offices of William Cafaro since 2013. He earned his B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, he worked as a law clerk for several employment law firms of note, including Schwartz & Perry, LLP and Outten & Golden LLP. Also while in law school, he was a judicial intern for United States Magistrate Judge Ronald L. Ellis of the Southern District of New York. He was admitted to practice in the state courts of New York and New Jersey in

Re:     Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
        Case No.: 14-Civ-05269 (ARR) (JO)
        December 5, 2016

2013 and later that same year was admitted to practice before the Southern and Eastern Districts of New York.  Since being admitted in 2013, he has focused primarily on plaintiffs' employment matters in both wage and hour matters as well as discrimination actions.  Further, while working at the Law Offices of William Cafaro, he has had the opportunity to second chair several successful wage and hour actions through trial and recently prevailed in a wage and hour case he tried in the Southern District of New York, *Cajamarca v. Yerina Restaurant Corp., et al.*, No. 15-cv-08244 (GHW), and was approved at $250 per hour in the post-trial fee application.  He is also a member of the South Asian Bar Association of New York, where he sits on the Public Interest Committee.  His normal hourly rate is $250.00 and the Plaintiffs are requesting this rate for his work in this case.  *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Amit Kumar his normal hourly rate of $250 per hour); *Mendes-Garcia v. 77 Deerhurst Corp. et al.*, No. 11-cv-02797 (PGG) (MHD), D.E. 226 (S.D.N.Y. Aug. 19, 2014) (awarding Amit Kumar, Esq. a reasonable rate of $250 per hour in a FLSA matter)

Nicholas Duran is a paralegal with the Law Offices of William Cafaro.  He graduated from John Jay College of Criminal Justice, where he received a B.S. in Criminal Justice with a minor in Law in 2009.  He also graduated from LaGuardia Community College in 2007, where is received an A.A.S degree in paralegal studies.  Mr. Duran began working for the Law Offices of William Cafaro in 2007 and is fluent in both English and Spanish.  Mr. Duran provided paralegal and translation services throughout the duration of the litigation.  Mr. Duran's normal hourly rate is $125.00 and Plaintiffs are requesting same for his work on this action.  *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Mr. Duran his normal hourly rate of $125 per hour).

Odaris Palacios was a legal assistant with the Law offices of William Cafaro.  She graduated from John Jay College of Criminal Justice in June 2011, where she received a B.A. in Criminal Justice with a concentration in Jurisprudence and Law.  Ms. Palacios began working for the Law Offices of William Cafaro in 2011 and is fluent in English, Spanish, and Portuguese.  Ms. Palacios assisted the attorneys throughout the litigation and provided translation services when needed.  Ms. Palacios' normal hourly rate is $125.00 and Plaintiff is requesting a reduced rate of $75.00 per hour for her work on this action.  *See Cajamarca v. Yerina Rest. Corp.*, No. 15-cv-8244, 2016 U.S. Dist. LEXIS 102686 (S.D.N.Y Aug. 4, 2016) (awarding Ms. Palacios her normal hourly rate of $125 per hour).

The full value of the lodestar, exclusive of out of pocket costs, is **$151,495.00**, which is significantly higher than the award of attorney's fees being requested.  Plaintiffs' counsel is also entitled to costs associated with the prosecution of the litigation.  Both the FLSA and the NYLL provide that a prevailing party is entitled to costs associated with the litigation.  *See* 29 U.S.C. §216(b); N.Y. Lab. Law § 198(1-a), (1-d); *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 U.S. Dist. LEXIS 60695, at *42 (S.D.N.Y. Apr. 30, 2014) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses").  Plaintiffs' counsel has expended **$9,418.44** in out of pocket costs during the course of this litigation, Ex. 6 (spreadsheet detailing costs) is appended.  These reasonable out of pocket costs are for filing fees associated with bringing the action, service

Re:     Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
        Case No.: 14-Civ-05269 (ARR) (JO)
        December 5, 2016

of process, witness fees, transcript fees, translators, as well as other reasonable costs which were necessary to prosecute this action. The total lodestar along with the total disbursements equals $160,913.44. Plaintiffs' counsel is requesting a **$118.248.16** in attorneys' fees and **$9,418.44** in out of pocket costs for a total of **$127,666.60**.

Given the above, the plaintiffs will each be receiving full value of their claims, including all liquidated damages allowed by the Court after trial and the plaintiffs are not paying any attorney's fees or disbursements, which have been completely absorbed by the defendants. Moreover, under the terms of the settlement, all of the plaintiffs' proceeds are being paid up front. The balance of the attorneys' fees are being paid in installments over a period of ten months, Ex. "B" to Agreement appended as Ex. "1", which are secured by a confession of judgment executed by Mr. Boumoussa and each of the defendant entities. The defendants basically paid the full value of plaintiffs' claims rather than continuing this litigation. This settlement essentially approximates the result which would have followed after the damages phase. Plaintiffs would have received the same amounts as they are receiving under the settlement, and my office would have made an even larger fee application which defendants would have contested. I have personally spoken to each of the plaintiffs regarding the settlement proceeds and how they would be divided, not only between the plaintiffs but also between the plaintiffs and this firm. None of the plaintiffs have voiced any opposition to this request for attorneys' fees and in plaintiffs' counsel's assessment, the Court should approve the settlement agreement and fee arrangement as fair and reasonable.

In light of the excellent result achieved for the plaintiffs, it is respectively requested that this fee request be approved in its entirety.

### VII.    Conclusion

For the reasons set forth above the parties jointly request that the Court approve the settlement as reflected in the Agreement. Plaintiffs' counsel further requests that the Court approve the attorneys' fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

William Cafaro (WC2730)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400

Re: Ayala v. Your Favorite Auto Repair & Diagnostic Center, et al.
　　　Case No.: 14-C<small>IV</small>-05269 (ARR) (JO)
　　　December 5, 2016

[bcafaro@CafaroEsq.com](mailto:bcafaro@CafaroEsq.com)

cc:
*Via ECF*
Oscar Michelen